# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

FILED

Aug 26, 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| JARIN CRUZ-ROSALES | ) | 2:22-mj-0124 KJN |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 20, 2022_____ in the county of _____Placer_____ in the _____Eastern_____ District of _____California_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| **21 U.S.C. § 841(a)(1)** | **Possession with intent to distribute fentanyl** |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/
_____
*Complainant's signature*

Thomas Wiebold, Special Agent, DEA
_____
*Printed name and title*

Sworn to me and signed via telephone.

Date: 8/26/2022 at 3:20 p.m.

City and state:  Sacramento, California

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT FOR JARIN CRUZ-ROSALES**

1.      I, Thomas D. Wiebold, being first duly sworn, hereby depose and state as follows:

## I.      **PURPOSE**

2.      This Affidavit is submitted in support of an arrest warrant and criminal complaint charging **Jarin Cruz-Rosales** with a violation of 21 U.S.C. § 841(a)(1) – Possession with intent to distribute fentanyl.

## II.      **INTRODUCTION AND AGENT BACKGROUND**

3.      I am a Special Agent with the Drug Enforcement Administration and I have been so employed since April 2022.  Currently, I am assigned to the DEA Sacramento District Office.  Before this posting, I attended the sixteen-week DEA Basic Agent Training Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations, including, but not limited to, 21 U.S.C. § 841 and 846. Additionally, this training included several hundred hours of comprehensive, formalized instruction in narcotics investigations, drug identification, detection, interdiction, financial investigations and money laundering, informant handling, law classes, report writing, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures.  Thus far, as a DEA Special Agent, I have participated in seven investigations targeting methamphetamine, cocaine, and heroin dealers operating in the greater Sacramento area.

4.      Before joining the DEA, I served in the United States Army from 2012-2018 as an Infantry Officer assigned to the 75th Ranger Regiment, a Special Operations unit.  During this time, I served as a platoon leader and in other leadership roles in which I was responsible for various units comprising between 40 and 300 personnel.  In 2017, I served as a deputy targeting officer in Afghanistan for a Combined Joint Special Operations Task Force.  In that position, I was responsible for synthesizing multi-source intelligence for identifying enemy military targets.  As a result of my service, I am well-versed in the use of sensitive intelligence collection techniques, including communications interceptions, GPS tracking devices, analysis of satellite imagery, and human source handling.

5.      As a federal agent, I am authorized to investigate violations of laws of the United States

1 and to execute warrants issued under the authority of the United States.

2   6. This affidavit is submitted for the limited purpose of securing a criminal complaint and

3 arrest warrant. I have not included every fact known to me concerning this investigation. I have set

4 forth only the facts necessary to establish probable cause that violations of the federal laws identified

5 above have occurred. Further, my understanding of the significance of certain events and facts may

6 change as the investigation progresses.

7   7. I have based my statements, opinions, and conclusions in this affidavit on my training

8 and experience as a DEA Special Agent, my personal knowledge of the facts and circumstances

9 obtained through my participation in this investigation, information gathered from other agents and law

10 enforcement officers, their reports, photographic evidence, as well as from public records and law

11 enforcement databases. I believe these sources to be reliable. I have described conversations and events

12 in this affidavit in substance and relevant part, unless otherwise noted, rather than in their entirety or

13 verbatim. This affidavit also reflects my current understanding of facts relating to this investigation,

14 which may change as the investigation proceeds and the facts become more fully developed.

15   8. Based on the facts set forth in this affidavit, there is probable cause to believe that **Jarin**

16 **Cruz-Rosales** possessed with intent to distribute fentanyl, a felony, in violation of Title 21 U.S.C.

17 § 841(a)(1).

18 ### III.   <u>PROBABLE CAUSE</u>

19   9. On or about June 20, 2022, Placer County Special Investigation Unit and Placer County

20 Sheriff's Office Special Operation Detectives learned of a subject who was transporting and selling

21 fentanyl in Placer County, California. A Confidential Source ("CS[1]") informed law enforcement that

22 **Cruz-Rosales** would be making a delivery of fentanyl to the CS on that day, in the parking lot of the

23 Springhill Suites hotel, 10593 Fairway Drive, Roseville, California. The CS indicated that **Cruz-**

24

25   [1] The CS is the defendant in a criminal case in California Superior Court. The CS was arrested
26 for possession of fentanyl for sale and volunteered to cooperate with law enforcement in an effort to
mitigate the charges and/or any sentence arising from them. The CS's prior criminal history includes
27 convictions for property crime and controlled substance violations. Despite the CS's criminal record, I
have no reason to believe CS has been unreliable or untruthful about the information the CS provided
28 about **Cruz-Rosales** or the future delivery of fentanyl. Moreover, law enforcement agents have been
able to verify this information independently.

**Rosales** was a Hispanic or Honduran male, who would be traveling from the San Francisco Bay area, driving a white sedan.

10.     Near the agreed time of the transaction, law enforcement set up surveillance in the vicinity of the hotel.  At approximately 3 p.m., officers saw a white sedan being driven by a subject matching the physical description the CS had provided.  The driver pulled the sedan into the parking lot of the hotel and parked.  At that time, the CS – who was with surveillance officers – positively identified the driver as **Cruz-Rosales**.

11.     Having received confirmation that the driver of the car was **Cruz-Rosales**, officers stopped the vehicle and detained the driver (later confirmed to be **Cruz-Rosales**).  Officers searched **Cruz-Rosales**' car and located a gray plastic bag in the center console.  The bag contained a blue and white substance, formed into blocks of varying sizes, which officers suspected to be the fentanyl the CS had described.  The blocks were packaged into smaller bags.  (See photograph, below.)  In its packaging, the suspected fentanyl weighed approximately 1.37 pounds.  The gray bag also contained a clear plastic bag containing approximately 25 blue pills imprinted with the letter "M" on one side, and "30" on the



other. From my training and experience, I know that pills colored and stamped in this way are most frequently counterfeit pain medication containing fentanyl.

12. Inside the car's glovebox, officers located a black plastic bag, which also contained what appeared to be a powder, formed into multicolored blocks of varying sizes, which officers also suspected to be fentanyl. Like the substance found in the center console, the colored blocks were packaged into smaller bags. In its packaging, the suspected fentanyl from the glovebox weighed approximately 1.5 pounds. In total, officers recovered approximately 2.95 pounds of suspected fentanyl (in its packaging) from **Cruz-Rosales**' car.

13. Officers used a TruNarc[2] laser to conduct a presumptive test on the substance seized from the vehicle. The TruNarc test indicated the presence of fentanyl. Officers arrested **Cruz-Rosales** for violations of California Health and Safety Code 11351 and 11352, and took him into custody. During the arrest, officers found two cellular telephones, one on **Cruz-Rosales**'s person, and one in his car. Based on my training and experience, I know that drug traffickers often carry multiple cellular telephones to communicate with customers, associates, and superiors in the criminal organization.

14. Officers attempted to interview **Cruz-Rosales** at the time of his arrest, under a *Miranda* warning, but **Cruz-Rosales** indicated that did not speak much English. Based on this apparent language barrier, officers terminated the interview.

15. I have reviewed **Cruz-Rosales**' criminal history and learned he was arrested in San Francisco in November of 2004 for controlled substance violations. He was later convicted for violating California Health and Safety Code 11351 – Possess a controlled substance with the intent to sell – a felony. More recently, in February 2013, **Cruz-Rosales** was arrested in Utah and convicted of violating Utah Code §§ 58-37-8(1)(A)(III) – Possession of a controlled substance with intent to distribute – a felony. Additionally, **Cruz-Rosales** is the subject of an active federal arrest warrant for immigration violations issued by Immigration and Customs Enforcement.

---

[2] TruNarc is a handheld device used by law enforcement to identify a substance safely. It uses a laser to excite the bonds of molecules in a chemical compound, which generates measurable scattered light. The device examines the wavelengths of that light to determine the molecular structure of the compound to identify it.

## IV.     REQUEST FOR COMPLAINT AND WARRANT

16.     Based on the foregoing information, there is probable cause to believe that **Cruz-Rosales** has violated 21 U.S.C. § 841(a)(1) – Possession with intent to distribute fentanyl.  I therefore request respectfully that the Court issue a Criminal Complaint and Arrest Warrant for this charge against him.

## V.     REQUEST TO SEAL

17.     I further request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of the criminal complaint and arrest warrant, including this application and affidavit, as well as the arrest warrant itself.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Based on my training and experience, I know that criminals actively search for criminal affidavits and warrants via the internet and disseminate them to other criminals as they deem appropriate, e.g., post them publicly online. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness, including by causing co-conspirators to flee, destroy or otherwise alter evidence, or to notify confederates. Accordingly, there is good cause to seal these documents.

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Respectfully submitted,

/s/
_____
Thomas D. Wiebold
Special Agent, DEA

Subscribed and sworn to me via telephone on:     08/26/2022 at 3:20 p.m.

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Approved as to form by
AUSA JAMES R. CONOLLY